## CIRCUIT COURT OF THE CITY OF ROANOKE

William A. Nicely et al.

v.

George V. Gardner

May 5, 1988

Case No. CH87000507R

By JUDGE R. WILLIAM ARTHUR

The issue in this case is whether or not a valid marriage ceremony was performed on September 16, 1986, between Patricia Nicely and George Gardner in Washington, D.C. A rebuttable presumption of regularity of the marriage obtains due to the issuance of a marriage license and certificate. The burden is upon the plaintiffs to prove by clear and convincing evidence that no assent to the marriage was given by Patricia and that, therefore, it was, and is, a nullity.

I am persuaded beyond peradventure that no valid marriage was consummated. I am forced to this conclusion after considering all of the evidence, particularly the following.

1. The ceremony was arranged by the defendant to be performed in a car in Washington, D.C., when all of the participants resided in Roanoke, Virginia. There were no witnesses. The only persons present were Patricia, who could not speak; the minister, a close personal friend of Mr. Gardner, who implicitly trusted him; and Mr. Gardner himself. Significantly, Henrietta Elliott, who made the trip to care for Miss Nicely, was left at the hotel by Mr. Gardner when she easily could have accompanied the others.

2. The only thing Patricia did during the ceremony, according to the Rev. Mr. Hoover, was to try to get out of the car, whereupon Mr. Gardner locked the door. Patricia was mute throughout the ceremony. She gave no sign of assent. (After the ceremony the witness described Patricia as "euphoric" and "happy.")

3. When Rev. Mr. Hoover asked, "Pat, do you want to marry George?", she shook her head from right to left. The minister construed that to mean "Yes" because he had seen other Alzheimer patients do that.

4. Mr. Gardner told the minister that the wedding ceremony was to be kept secret, even from Gardner's own children. This is strange, to say the least, unless Mr. Gardner did not want anyone to observe Patricia's conduct during the ceremony--conduct which may have raised questions regarding the validity of the marriage.

5. Nancy Willis, a certified geriatric Nurse's Assistant, testified that she was experienced with Alzheimer patients; that she attended Patricia for some time; that she never said a word; and that she did not respond to her questions or statements.

6. Joan Williams, a Nurse's Assistant, testified that she attended Alzheimer patients, including Patricia; that she required additional help in September, 1986; that Pat's condition deteriorated rapidly and that on September 18, 1986 (two days after the marriage ceremony) she was transferred to the Convalescent Center and that Pat was then agitated and fought her, "kind of."

7. Dr. Monahan testified that Mr. Gardner was very attentive and helpful to Patricia and that in November, 1985, she stated that she was going to marry him, Mr. Gardner. It was Dr. Monahan's opinion that she intended to do so. The doctor further testified that if Pat shook her head from left to right, she meant "No." It is the doctor's firm opinion that Miss Nicely suffered from two ailments: "Dementia of the Alzheimer type" and mental disease.

8. Barbara Bryant testified that she and Mr. Gardner continued to have sex up to Patricia's death, at which time he casually said to her, "Oh, by the way, Pat and I were married eight months ago."

9. A spurious common law marriage "contract" was prepared by defendant Gardner in October, 1987, after

the marriage ceremony, to which he fraudulently attached Pat's signature. This instrument was admitted into evidence as relevant on the issue of whether or not Mr. Gardner believed the District of Columbia marriage to be valid. The court finds that the defendant would have had no reason to fabricate this document if he believed himself already to be lawfully married to Miss Nicely.

10. Hazel Compton, a certified geriatric Nurse's Aid, testified that she worked with Patricia from July 26, 1986, to September 13, 1986. The witness testified that when Patricia wished to say "Yes," she would move her head from left to right. When she demonstrated the movement, however, the witness dropped her chin toward her shoulder. When questioned further about the matter, the witness stated that Patricia would not move her head in a clear left-to-right motion to express a "yes" response but would do it in the manner that the witness had demonstrated from the stand.

11. Finally, I am of the opinion that the court should consider the failure of defendant Gardner to testify since his testimony would have been more than "merely cumulative." His failure to testify raises a presumption that his testimony would have been adverse to his case.

I have inadvertently omitted a bit of Dr. Monahan's evidence that is pertinent. I refer to his statement that Patricia thought that a Mr. McGuire was following her and that she would undress in public, not realizing that this was socially unacceptable.

After carefully considering all of the evidence in the case, together with the reasonable inferences therefrom, I am of the opinion that judgment should be entered for the plaintiffs, and it is so adjudged, ordered and decreed.